UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 |
| YESHIVAH OHEL MOSHE,<br>*aka* Yeshiva Ohel Moshe | Case No. 16-43681-ess |
| Debtor. | |

--------------------------------------------------------------x

**MEMORANDUM DECISION ON THE ADEQUACY OF THE DEBTOR'S AMENDED DISCLOSURE STATEMENT**

Appearances:

Mark A. Frankel, Esq.
Backenroth Frankel & Krinsky LLP
800 Third Avenue
11th Floor
New York, NY 10022
*Attorneys for Yeshivah Ohel Moshe*

Seth H. Lieberman, Esq.
Matthew W. Silverman, Esq.
Pryor Cashman LLP
7 Times Square
New York, NY 10036
*Attorneys for NY Five Star Equity Corp.*

HONORABLE ELIZABETH S. STONG
UNITED STATES BANKRUPTCY JUDGE

**Introduction**

Before the Court is the request to approve the Amended Disclosure Statement filed by Yeshivah Ohel Moshe ("Yeshivah") in this Chapter 11 case. Yeshivah seeks approval of the Amended Disclosure Statement which provides, among other things, for the cure of Yeshivah's default with respect to a loan secured by a mortgage held by NY Five Star Equity Corp. ("Five Star"). Yeshivah seeks to cure the default and reinstate the loan by paying the arrears and costs at the non-default interest rate on the effective date of the plan. Five Star objects to the Amended Disclosure Statement on grounds that it is entitled to the default interest rate under the terms of the loan.

**Jurisdiction**

This Court has jurisdiction over this proceeding pursuant to Judiciary Code Sections 1334(b) and 157(b)(1). This is a core proceeding pursuant to Judiciary Code Section 157(b)(2)(A). And as a core matter, this Court has constitutional authority to enter a final judgment, because it stems "from the bankruptcy itself." *Stern v. Marshall*, 564 U.S. 462, 499 (2011). For these reasons, this Court has jurisdiction to consider and enter a final order here.

**Background**

On August 16, 2016, Yeshivah filed a petition for relief under Chapter 11 of the Bankruptcy Code. Yeshivah is a religious corporation that operates a synagogue and school located at 7914 Bay Parkway, Brooklyn, New York (the "Property"). The filing of this bankruptcy case was triggered by a pending foreclosure action commenced in the Supreme Court of the State of New York, Kings County, with respect to a mortgage on the Property now held by Five Star (the "Foreclosure Action"). Amended Disclosure Statement ¶ 14, ECF No. 43.

Yeshivah continues to operate as a debtor in possession pursuant to Bankruptcy Code Sections 1107(a) and 1108.

As set forth in the Amended Disclosure Statement, in early 2007, Yeshivah sought to refinance some of its debts. The Park Avenue Bank provided a commitment letter for a ten-year, $2 million loan to be secured by a mortgage on the Property (the "Loan"). Am. Discl. Stmt. ¶ 17. On May 8, 2007, Yeshivah filed a petition with the Supreme Court of the State of New York, Kings County, seeking to approve the Loan and to mortgage the Property as required by New York's Not-for-Profit Corporation Law. On May 18, 2007, the court approved the loan and granted leave to mortgage the Property. Am. Discl. Stmt. ¶ 19. On May 21, 2007, Yeshivah and The Park Avenue Bank executed a note in the amount of $2 million (the "Note"). The Note provides for interest at the rate of eight percent from June 1, 2007 to June 1, 2012, and at a variable rate from July 1, 2012 to May 1, 2017. The Note's full remaining balance is due on June 1, 2017 (the "Maturity Date"). The Note also provides that in the event that Yeshivah fails to make all of the payments due on the principal sum and interest on the Loan, Yeshivah must pay interest at a default rate of 24 percent.

As also set forth in the Amended Disclosure Statement, on March 12, 2010, The Park Avenue Bank failed, and was closed by the New York State Banking Department. Am. Discl. Stmt. ¶ 22. The Federal Deposit Insurance Corporation was appointed receiver and the Loan was assigned to Valley National Bank under the terms of a purchase agreement. Valley National Bank then assigned its interest in the Note and mortgage to an affiliate, VNB New York Corp. ("VNB"). VNB then sold the Note and mortgage to HDHJ Group, LLC, which assigned the Note and mortgage to Five Star. Am. Discl. Stmt. ¶¶ 22-23.

*The Foreclosure Action*

The Amended Disclosure Statement states that in February 2009, more than eight years ago, Yeshivah ceased making payments on the Loan. Am. Discl. Stmt. ¶ 22. Following the default, on May 2, 2011, Five Star's predecessor VNB commenced the Foreclosure Action in New York Supreme Court. *Id*. Shortly thereafter, VNB moved for summary judgment, and after several adjournments, the state court issued an order granting summary judgment on default on August 22, 2014 (the "Summary Judgment Order").

Five Star states that on September 9, 2015, Yeshivah moved to vacate the Summary Judgment Order (the "Motion to Vacate") arguing, among other things, that prior counsel's failure to oppose the summary judgment motion was the result of excusable neglect. Five Star also notes that Yeshivah argued that The Park Avenue Bank engaged in criminal usury when it failed to deliver an escrow holdback, as required under the terms of the Loan. Five Star opposed the Motion to Vacate, arguing that Yeshivah lacked "reasonable excuse or defense to warrant[] vacatur of the Summary Judgment Order." Five Star cross-moved for sanctions based on alleged false representations made in the Motion to Vacate, namely, Yeshivah's contention that it did not receive the escrow holdback in accordance with the terms of the Loan.

Five Star states that on May 18, 2016, the state court denied the Motion to Vacate. Yeshivah filed a Notice of Appeal from that order. Five Star filed a Notice of Cross-Appeal, seeking to overturn the May 18, 2016 order to the extent that the order denied Five Star's Motion for Sanctions.

Five Star states that on July 21, 2016, Yeshivah sought a temporary restraining order to stay enforcement of the May 18, 2016 order pending appeal (the "Motion to Stay"), and on

August 9, 2016, the court denied the Motion to Stay. And on August 16, 2016, Yeshivah filed this bankruptcy case in order to stay the Foreclosure Action.

*This Bankruptcy Case*

Five Star filed a claim in this bankruptcy case in the amount of $5,817,772.76. The claim consists of $1,986,626.82 in principal, $10,473.20 in non-default interest, $3,644,803.84 in default interest, and $175,869 in other fees, expenses, and advances. Yeshivah has not objected to Five Star's claim.

On September 1, 2016, Yeshivah filed a Chapter 11 plan and disclosure statement. Five Star objected to the Disclosure Statement, arguing that it should not be approved because the plan that it describes is "patently unconfirmable." Obj. to Discl. Stmt. ¶¶ 36-37, ECF No. 30. In particular, Five Star argues that the Disclosure Statement incorrectly provides for reinstatement of the Loan at the non-default interest rate. Yeshivah replied to the objection, and on November 1, 2016, the Court held a hearing on the Disclosure Statement at which Yeshivah and Five Star, each by counsel, appeared and were heard. At the hearing, the parties addressed, in detail, the question of whether the plan was unconfirmable and what other avenues to reorganization might be available to Yeshivah. On consent, Yeshivah was directed to file an amended disclosure statement by November 15, 2016.

On November 3, 2016, Yeshivah filed the Amended Chapter 11 Plan and Amended Disclosure Statement. The Amended Chapter 11 Plan provides for four classes of claims including Class 1- New York City tax liens, Class 2- Five Star's secured claim, Class 3- priority claims, and Class 4- general unsecured claims. Am. Discl. Stmt. ¶¶ 64-75. Each class is described below.

Class 1 – New York City Tax Liens  The Amended Chapter 11 Plan provides that allowed New York City tax liens will be paid in full on the plan's effective date, plus interest that has accrued from the petition date through the date of payment.  Class 1 claims are estimated in the amount of $0.00.

Class 2 – Five Star's Secured Claim  Five Star is the sole holder of a Class 2 claim.  The Amended Chapter 11 Plan states that the arrears and other charges will be paid in full on the plan's effective date at the non-default interest rate in order to reinstate the Loan under Bankruptcy Code Section 1124(2).  Yeshivah estimates the amount necessary to reinstate the Loan on these terms to be $1,243,156.00.

Class 3 – Priority Claims  The Amended Chapter 11 Plan states that priority claims will be paid in full on the plan's effective date, plus interest from the petition date through the date of payment.  Class 3 claims are estimated in the amount of $0.00.

Class 4 – General Unsecured Claims  The Amended Chapter 11 Plan states that general unsecured claims will be paid in full on the plan's effective date.  Unsecured claims are estimated in the amount of $980,658.00.  Yeshivah states that the largest unsecured creditors will defer or waive payment and that payment on the plan's effective date will not exceed $506,000.00.

On November 16, 2016, the Court issued a Stipulation and Scheduling Order directing the parties to "file brief[s] on the issue of whether the Bankruptcy Code permits or prohibits [Yeshivah] to reinstate its debt to Five Star by curing the existing default at the non-default interest rate . . . ."  Stip. & Order 2, ECF No. 57.

On November 22, 2016, Yeshivah filed an Initial Brief on this issue.  Yeshivah argues that Bankruptcy Code Section 1124(2) permits a debtor to reinstate a loan using the non-default

interest rate.  Yeshivah reasons that by paying the arrears at the non-default rate of interest, it is "tak[ing] care" of the event that triggered the default, and thus nullifying the contractual consequences of that default.  Yeshivah contends that the enactment of Bankruptcy Code Section 1123(d) does not modify the ability to cure using the non-default interest rate under Bankruptcy Code Section 1124(2).  Yeshivah cites the dissent in the Ninth Circuit's ruling in *Pacifica L 51 LLC v. New Investments Inc. (In re New Investments, Inc.)*, 840 F.3d 1137 (9th Cir. 2016), to support this argument.  Yeshivah also argues that The Park Avenue Bank engaged in predatory lending practices and that the 24 percent default interest rate should be disallowed because it is unreasonably high and "bears no relationship to [Five Star's] actual damages."  Yeshivah Initial Br. ¶¶ 80-81, ECF No. 66.

That same day, Five Star also filed its Initial Brief.  Five Star argues that by operation of Bankruptcy Code Section 1123(d), the amount required to cure a default is governed by the underlying loan agreement and the applicable state law – here, New York state law.  Five Star contends that the loan agreement requires payment at the default interest rate of 24 percent, and that New York law permits repayment at that default rate.  Further, Five Star states that its claim is impaired unless Yeshivah cures using the default interest rate and as a result, Five Star's support of the Amended Chapter 11 Plan is necessary in order for the plan to be confirmed.

On December 20, 2016, Yeshivah responded to Five Star's Initial Brief.  Yeshivah argues, among other things, that the Court should consider the disparity between the default and non-default interest rates, misconduct by the secured creditor, whether the default rate constitutes a penalty, and whether the default rate would prevent Yeshivah's fresh start.  Yeshivah also contends that equitable factors should be taken into account, including Yeshivah's status as a non-profit institution and Yeshivah's service to the poor.

And that same day, Five Star also responded arguing, among other things, that the weight of authority in the Second Circuit supports the position that Five Star is entitled to the default rate of interest in order to reinstate the Loan. Five Star also states that Yeshivah's reliance on the dissent in *In re New Investments* is "misplaced," as the majority found that in light of Bankruptcy Code Section 1123(d), a creditor is entitled to the default rate of interest. Five Star Resp. Br. ¶¶ 25-29, ECF No. 81.

On January 12, 2017, the Court held a hearing on the Amended Disclosure Statement at which Yeshivah, Five Star, and the United States Trustee appeared and were heard. On February 2, 2017, the Court held a continued hearing on the Amended Disclosure Statement, at which Yeshivah, Five Star, and the United States Trustee appeared and were heard, and Yeshivah presented its oral argument on the issue. On March 3, 2017, the Court held a continued hearing on the Amended Disclosure Statement at which Five Star responded to Yeshivah's argument. And on May 10, 2017, the Court held a continued hearing on the Amended Disclosure Statement at which Yeshivah, Five Star, and the United States Trustee appeared and were heard, and for the reasons stated on the record of that hearing and set forth in this Memorandum Decision, the Court denied Yeshivah's request to approve the Amended Disclosure Statement.

*Whether Yeshivah Has Shown that the Amended Disclosure Statement Should Be Approved*

In order for a disclosure statement to be approved, it must include "adequate information" or "information of a kind, and in sufficient detail . . . that would enable . . . a hypothetical investor of the relevant class to make an informed judgment about the plan . . . ." 11 U.S.C. § 1125(a)(1). Courts will not approve a disclosure statement that describes a "patently unconfirmable" plan, that is, a plan that is incapable of confirmation as a matter of law. *In re Quigley Co.*, 377 B.R. 110, 115 (Bankr. S.D.N.Y. 2007). If a Chapter 11 plan does not comply

with Bankruptcy Code Section 1129, courts will not subject the estate to the expense of the vote solicitation and plan confirmation process. *In re Pecht*, 57 B.R. 137, 139 (Bankr. E.D. Va. 1986). In such circumstances, therefore it is "incumbent upon the [c]ourt to decline approval of the disclosure statement and prevent diminution of the estate." *In re Pecht*, 57 B.R. at 139.

In 1994, Congress amended the Bankruptcy Code and added Bankruptcy Code Section 1123(d). Bankruptcy Code Section 1123 states that a Chapter 11 plan "shall . . . provide adequate means for the plan's implementation, such as . . . curing or waiving of any default." 11 U.S.C. § 1123(a)(5)(G). Section 1123(d) provides that "if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." 11 U.S.C. § 1123(d).

Courts interpreting Section 1123(d) have held that the underlying loan agreement and state law determine whether a debtor must cure using the default rate of interest in a Chapter 11 plan. *In re New Invs.*, 840 F.3d at 1140-42. As the Eleventh Circuit found, pursuant to Bankruptcy Code Section 1123(d), "a party cannot cure its default without paying the agreed-upon default-rate interest." *JPMCC 2006-LDP7 Miami Beach Lodging, LLC v. Sagamore Partners, Ltd. (In re Sagamore Partners, Ltd.)*, 620 Fed. App'x 864, 869 (11th Cir. 2015). Other courts are in accord. *See, e.g., In re 1 Ashbury Court Partners, L.L.C.*, 2011 WL 4712010, at *5 (Bankr. D. Kan. 2011) (finding that a debtor must cure using the default interest rate in light of Bankruptcy Code Section 1123(d)); *In re Moody Nat'l SHS Houston H, LLC*, 426 B.R. 667, 674 (Bankr. S.D. Tex. 2010) (holding that in order to cure a default and reinstate a loan, a lender is entitled to the default rate of interest in accordance with the underlying agreement and applicable state law).

Here, approval of the Amended Disclosure Statement turns on the question of whether Five Star is entitled to the default rate of interest on its claim pursuant to Bankruptcy Code Section 1123(d), in order for Yeshivah to cure the default. As set forth in the Amended Disclosure Statement, the Amended Chapter 11 Plan provides for Yeshivah to reinstate the Loan by paying the arrears at the non-default interest rate. The plan also provides that Five Star's claim is unimpaired and as a consequence, that Five Star is deemed to accept the plan. The Amended Chapter 11 Plan does so based on Yeshivah reinstating the Loan at the non-default interest rate. Five Star argues that its claim is impaired and it is entitled to vote because the Amended Chapter 11 Plan alters its contractual right to receive the default rate of interest. Five Star points to Bankruptcy Code Section 1124(2), which states that a claim is impaired "unless the plan cures any . . . default that occurred before or after the commencement of the case . . . and does not otherwise alter the legal, equitable, or contractual rights" of the holder. 11 U.S.C. § 1124(2)(A), (E).

Yeshivah argues that by paying the arrears at the non-default interest rate, it is "annulling" the event that triggered the default, and cites the Second Circuit's decision in *DiPierro v. Taddeo (In re Taddeo)*, 685 F.2d 24 (2d Cir. 1982), to support this argument. Yeshivah Initial Br., ECF No. 66, ¶¶ 46-47. In *In re Taddeo*, the Second Circuit held that a Chapter 13 debtor may "cure" a default under Bankruptcy Code Section 1322 by "taking care" of the triggering event, that is, by paying the arrears and non-default interest, thereby nullifying the contractual consequences of the default. *In re Taddeo*, 685 F.2d at 26. Yeshivah notes that the Ninth Circuit adopted *In re Taddeo*'s definition of "cure" in the context of a Chapter 11 plan in *Great Western Bank & Trust v. Entz-White Lumber and Supply, Inc. (In re Entz-White Lumber and Supply, Inc.)*, 850 F.2d 1338 (9th Cir. 1988). There, the court held that under certain

circumstances, a Chapter 11 debtor may cure a default on a debt by paying the arrears at the non-default interest rate and by doing so, avoid the default interest rate. *In re Entz-White*, 850 F.2d at 1342.

But the Ninth Circuit recently revisited this question and addressed "whether *Entz-White's* rule that a debtor may nullify a loan agreement's requirement of post-default interest remains good law in light of 11 U.S.C. § 1123(d) . . . ." *In re New Invs.*, 840 F.3d at 1139. The Ninth Circuit rejected the conclusion reached in *In re Entz-White* and found that Bankruptcy Code Section 1123(d) "renders void *Entz-White's* rule that a debtor who proposes to cure a default may avoid a higher, post-default interest rate in a loan agreement." *In re New Invs.*, 840 F.3d at 1140. The court found that Bankruptcy Code Section 1123(d) requires the parties to look to the underlying loan agreement and state law to determine how to cure a default. *Id.* And based on the loan agreement and Washington state law, the majority concluded that payment of the default rate of interest was required, and directed the repayment at that rate. *Id.* The dissent reasoned that neither the text nor the legislative history of Section 1123(d) supported the majority's view that the section displaced the ruling in *In re Entz-White*. *Id.* (Berzon, J., dissenting).

Yeshivah invites this Court to follow the logic of the dissent in *In re New Investments*. The dissent in *In re New Investments* argued that Bankruptcy Code Section 1123(d) was enacted by Congress solely to overrule the Supreme Court's holding in *Rake v. Wade*, 508 U.S. 464 (1993), and that the amendment did not eliminate the definition of "cure" adopted by the Ninth Circuit in *In re Entz-White*. *In re New Invs.*, 840 F.3d at 1143-44 (Berzon, J., dissenting). In *Rake*, the Supreme Court held that in order to cure a default under a Chapter 13 plan, oversecured creditors are entitled to pre- and post-confirmation interest on arrears, even if the

underlying agreement and state law do not require such interest. *Rake*, 508 U.S. at 466. As the dissent argued, this allowed oversecured creditors to collect "interest on top of the interest payments paid by debtors under their mortgages." *In re New Invs.*, 840 F.3d at 1144 (citing *Rake*, 508 U.S. at 470-75).

But as the Ninth Circuit and other courts have held, the argument that Section 1123(d) is limited solely to abrogating the result in *Rake* conflicts with the text of the statute. As the majority held in *In re New Investments,* "[t]he plain language of [Section] 1123(d) compels the holding that a debtor cannot nullify a preexisting obligation in a loan agreement to pay post-default interest solely by proposing a cure." *In re New Invs.*, 840 F.3d at 1141. Viewed another way, the terms of Section 1123(d) are not as limited as Yeshivah suggests, and their consequences are broader than Yeshivah asserts. As one bankruptcy court observed, "Congress did not limit the cure to the narrow problem that *Rake* created." *In re Moody*, 426 B.R. at 674.

A review of the legislative history of Bankruptcy Code Section 1123(d) reinforces this conclusion. As the court in *In re New Investments* and others have recognized, the legislative history of Bankruptcy Code Section 1123(d) does not support the argument that the Section is limited solely to addressing the result in *Rake*. *See In re New Invs.*, 840 F.3d at 1141 (observing that "even if we were to read ambiguity into the statute, the legislative history would not help [the debtor]."); *In re Moody*, 426 B.R. at 674 (finding that Congress addressed the problem in *Rake* with a "broader declaration."). By enacting Bankruptcy Code Section 1123(d), Congress intended not only to supplant the ruling in *Rake,* but also to require that "all cures . . . be determined in accordance with state law and the underlying agreement." *In re Moody*, 426 B.R. at 674.

This means that in proposing a Chapter 11 plan, a debtor cannot disregard Section 1123(d) and cure a default under Section 1124(2) by paying the arrears at the non-default rate of interest. "Because the 'denial of a mortgagee's contractual right to interest at a default rate does 'alter' the secured creditor's contractual rights within the meaning of subsection (D) of Section 1124(2) . . . Section 1124(2) . . . does not provide a statutory basis for judicial nullification of a contract right to default rate interest.'" *In re 139-141 Owners Corp.*, 313 B.R. 364, 368 (S.D.N.Y. 2004) (quoting *In re 139-141 Owners Corp.,* 306 B.R. 763, 768 (Bankr. S.D.N.Y. 2004)). Therefore, in order to determine whether Five Star is entitled to the default interest rate, the Court must look to the underlying loan agreement and New York law in accordance with Section 1123(d).

Here, the underlying loan agreement requires – and New York State law permits – the payment of the default interest rate following a default. The loan agreement provides that in the event Yeshivah fails to make payments towards the principal and interest prior to the Maturity Date, Yeshivah will pay "expenses, charges and damages . . . at a rate equal to the lesser of (i) twenty-four (24%) percent per annum or (ii) the maximum rate of interest permitted by applicable law on the principal sum to such date of actual payment." Five Star Proof of Claim 9-1, Ex. A, Mortgage and Security Agreement ¶ 30. And under New York law, "[i]t is well settled that an agreement to pay interest at a higher rate in the event of default or maturity is an agreement to pay interest and not a penalty." *Jamaica Sav. Bank FSB v. Ascot Owners, Inc.*, 245 A.D.2d 20, 20 (N.Y. App. Div. 1st Dep't 1997). Courts have held that a contract term that provides for a default rate of 24 percent is enforceable under New York state law. *See Dominion Fin. Corp. v. Haimil Realty Corp.*, 546 B.R. 257, 265 (Bankr. S.D.N.Y. 2016) (awarding interest

at the 24 percent default rate and stating that "New York courts have enforced agreements that provide for similar default rates.").

Yeshivah's proposed treatment does not provide the default rate of interest as required by the Loan Agreement and as permitted under New York law. For these reasons, the Amended Chapter 11 Plan does not comply with Bankruptcy Code Section 1123(d) and is therefore "patently unconfirmable."

*Whether Yeshivah Has Shown that Five Star's Claim Is Unimpaired and Five Star Is Deemed To Accept the Amended Chapter 11 Plan*

In order to render Five Star's claim unimpaired so that Five Star is deemed to accept the plan, Yeshivah must satisfy the requirements of Bankruptcy Code Section 1124(2). That is, Yeshivah must cure the default and not "otherwise alter the legal, equitable, or contractual rights" of Five Star. 11 U.S.C. § 1124(2)(E). Here, it is plain from the record that the Amended Chapter 11 Plan alters Five Star's contractual right to receive the default rate of interest, to the detriment of Five Star. As a result, Five Star's claim is impaired, and Five Star is entitled to vote on the Amended Chapter 11 Plan. *See, e.g., In re New Invs.*, 840 F.3d at 1141 (finding that the failure to provide default interest resulted in impairment of the secured creditor's claim). And as a consequence, without Five Star's support, the Amended Chapter 11 Plan cannot be confirmed. For these reasons too, the Amended Chapter 11 Plan is "patently unconfirmable."

* * *

In sum, by proposing to cure its default and reinstate the Loan by paying the arrears at the non-default interest rate, Yeshivah does not cure the default in accordance with the underlying loan agreement and New York state law, as required by Bankruptcy Code Section 1123(d). This renders the Amended Chapter 11 Plan "patently unconfirmable."

Further, Five Star's contractual rights are impaired by the Amended Chapter 11 Plan, and Five Star is entitled to vote. The Amended Chapter 11 Plan cannot be confirmed over Five Star's objection. *See* 11 U.S.C. § 1129(a)(8) (requiring that with respect to each class of claims or interests, each class has accepted the plan or is unimpaired). Five Star does not support the Amended Chapter 11 Plan, and has stated its intention to vote against the plan. This too renders the Amended Chapter 11 Plan "patently unconfirmable."

For these reasons, and based on the entire record, approval of the Amended Disclosure Statement is denied.

*Whether Yeshivah Has Shown that Grounds Exist To Modify or Disallow the Default Rate of Interest*

Yeshivah separately argues that if this Court finds that Five Star is entitled to the default rate of interest on its claim, the Court should nevertheless modify or disallow the default interest rate because it is unreasonably high and disproportionate to Five Star's actual damages. Yeshivah also contends that even those courts that apply a default rate of interest have nevertheless recognized that lender misconduct can be grounds to deny a lender the default interest rate. Yeshivah notes that in at least one case, *Ruskin v. Griffiths*, 269 F.2d 827 (2d Cir. 1959), the Second Circuit held that where a debtor is solvent, and in the absence of other factors that would make payment of the default rate inequitable, a secured creditor is entitled to the default interest rate. That is, Yeshivah argues, the Second Circuit recognized that in the appropriate circumstances, courts may apply equitable principles to modify an otherwise enforceable default interest rate. *Ruskin*, 269 F.2d at 830-32.

Yeshivah argues that the rule in *Ruskin* is based on the premise that in a contest between creditors, a secured creditor should not receive default interest at the expense of unsecured creditors, but in a contest between a creditor and equity holders, the debtor should be required to

pay the default rate. And Yeshivah argues that although it is solvent, it is a religious corporation without stockholders and as a result, the premise that the default rate should be paid in a contest between creditors and shareholders does not apply. Yeshivah also asks this Court to consider equitable factors in determining whether Five Star is entitled to the default rate of interest, namely, lender misconduct, and its operation as a charitable institution that provides important and much-needed services to the community.

Here, the record shows that Yeshivah makes no more than general and conclusory statements and assertions that the original lender, The Park Avenue Bank, engaged in lender misconduct and predatory lending practices. The record does not include persuasive and credible evidence that shows, or even suggests, that misconduct by the lender occurred, or that the default interest rate should be disallowed on these grounds. The absence of such evidence of misconduct is consistent with the fact that the Loan was approved by the New York Supreme Court in accordance with New York's Not-for-Profit Corporation Law.

The record also shows that Yeshivah has not demonstrated the presence of other factors that would render the default interest rate unenforceable. Courts have held that "[p]repetition interest is generally allowable to the extent and at the rate permitted under the applicable nonbankruptcy law, including the law of contracts." *Key Bank Nat'l Ass'n v. Milham (In re Milham)*, 141 F.3d 420, 423 (2d Cir. 1998) (citing Dean Pawlowic, *Entitlement to Interest under the Bankruptcy Code*, 12 Bankr. Dev. J. 149, 150 (1995)). And agreements to pay a higher interest rate in the event of a default may be enforced under New York law and are not viewed a penalty. *Jamaica Sav. Bank*, 245 A.D.2d at 20.

*     *     *

In sum, Yeshivah has not shown that grounds, including equitable grounds, exist to modify or disallow the payment of default interest as part of Five Star's claim.  Here too, by proposing to cure its default and reinstate the Loan by paying the arrears at the non-default interest rate on equitable grounds, Yeshivah does not cure the default in accordance with the underlying loan agreement and New York state law, as required by Bankruptcy Code Section 1123(d).  This renders the Amended Chapter 11 Plan "patently unconfirmable."

And here too, Five Star's contractual rights are impaired by the Amended Chapter 11 Plan, and Five Star is entitled to vote.  The Amended Chapter 11 Plan cannot be confirmed over Five Star's objection.  *See* 11 U.S.C. § 1129(a)(8) (requiring that with respect to each class of claims or interests, each class has accepted the plan or is unimpaired).  Five Star does not support the Amended Chapter 11 Plan, and has stated its intention to vote against the plan.  This too renders the Amended Chapter 11 Plan "patently unconfirmable."

For these reasons too, and based on the entire record, approval of the Amended Disclosure Statement is denied.

*Whether Yeshivah Has Shown that Grounds Exist To Disallow Post-Petition Interest*

Yeshivah also argues that the Court should disallow Five Star's claim for post-petition interest, on grounds that The Park Avenue Bank engaged in predatory lending practices and violated New York state laws, including the Religious Corporations Law and Not-for-Profit Corporation Law.

Bankruptcy Code Section 506(b) provides that an oversecured creditor is entitled to post-petition interest on theirs claims.  11 U.S.C. § 506(b).  Courts interpreting *Ruskin* have held that there is a rebuttable presumption that an oversecured creditor is entitled to post-petition interest, subject to equitable considerations.  *In re Gen. Growth Props., Inc.*, 451 B.R. 323, 328 (Bankr.

S.D.N.Y. 2011). Such considerations include whether there is creditor misconduct, whether the contractual interest rate constitutes a penalty, and whether the application of the default rate would impair the debtor's fresh start or cause harm to unsecured creditors. *In re P.G. Realty Co.*, 220 B.R. 773, 780 (Bankr. E.D.N.Y. 1998).

Here, the record does not include credible and persuasive evidence of creditor misconduct, by Five Star or its predecessors, including The Park Avenue Bank. Nor does the record show that the interest rates set forth in the Loan, including the default interest rate, constitutes a penalty under New York law. And while Yeshivah understandably prefers to pay a smaller claim, the record likewise does not show that payment of post-petition interest, even at the 24 percent default interest rate, will prevent Yeshivah's fresh start or harm unsecured creditors.

* * *

In sum, Yeshivah has not shown that grounds, including equitable grounds, exist to modify or disallow the payment of post-petition interest as part of Five Star's claim. By proposing to modify or disallow the payment of post-petition interest on equitable grounds, Yeshivah does not pay Five Star's claim in accordance with Bankruptcy Code Section 506(b). This renders the Amended Chapter 11 Plan "patently unconfirmable."

And here too, Five Star's right to post-petition interest is impaired by the Amended Chapter 11 Plan, and Five Star is entitled to vote. The Amended Chapter 11 Plan cannot be confirmed over Five Star's objection. *See* 11 U.S.C. § 1129(a)(8) (requiring that with respect to each class of claims or interests, each class has accepted the plan or is unimpaired). Five Star does not support the Amended Chapter 11 Plan, and has stated its intention to vote against the plan. This too renders the Amended Chapter 11 Plan "patently unconfirmable."

For these reasons as well, and based on the entire record, approval of the Amended Disclosure Statement is denied.

**Conclusion**

By proposing to cure its default and reinstate the Loan by paying the arrears at the non-default interest rate, Yeshivah does not cure the default in accordance with the underlying loan agreement and New York state law, as required by Bankruptcy Code Section 1123(d). This renders the Amended Chapter 11 Plan "patently unconfirmable."

Further, Five Star's contractual rights are impaired by the Amended Chapter 11 Plan, and Five Star is entitled to vote. The Amended Chapter 11 Plan cannot be confirmed over Five Star's objection. Five Star does not support the Amended Chapter 11 Plan, and has stated its intention to vote against the plan. This too renders the Amended Chapter 11 Plan "patently unconfirmable."

Also, Yeshivah has not shown that grounds, including equitable grounds, exist to modify or disallow the payment of default interest as part of Five Star's claim. Here too, by proposing to cure its default and reinstate the Loan by paying the arrears at the non-default interest rate on equitable grounds, Yeshivah does not cure the default in accordance with the underlying loan agreement and New York state law, as required by Bankruptcy Code Section 1123(d). This renders the Amended Chapter 11 Plan "patently unconfirmable."

And finally, Yeshivah has not shown that grounds, including equitable grounds, exist to modify or disallow the payment of post-petition interest as part of Five Star's claim. By proposing to modify or disallow the payment of post-petition interest on equitable grounds, Yeshivah does not pay Five Star's claim in accordance with Bankruptcy Code Section 506(b). This renders the Amended Chapter 11 Plan "patently unconfirmable."

And here too, Five Star's right to post-petition interest is impaired by the Amended Chapter 11 Plan, and Five Star is entitled to vote. The Amended Chapter 11 Plan cannot be confirmed over Five Star's objection. Five Star does not support the Amended Chapter 11 Plan, and has stated its intention to vote against the plan. This too renders the Amended Chapter 11 Plan "patently unconfirmable."

For the reasons stated herein, and based on the entire record, Yeshivah's request to approve the Amended Disclosure Statement is denied. An order in conformity with this Memorandum Decision will be entered simultaneously herewith.

**Dated: Brooklyn, New York**
**May 11, 2017**

**Elizabeth S. Stong**
**United States Bankruptcy Judge**